## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **JOSEPH SEME,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Case No. 11-2066 (RJL)** |
| | ) | |
| **FEDERAL BUREAU OF** | ) | |
| **INVESTIGATION, et al.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM OPINION
(September **20**, 2012) [Dkt. #16]

This matter is before the Court on Defendant's Motion for Summary Judgment

("Def.'s Mot.") [Dkt. #16]. For the reasons discussed below, the motion is GRANTED.

### BACKGROUND

Plaintiff brings this action against the Federal Bureau of Investigation ("FBI"), a

component of the United States Department of Justice ("DOJ"), under the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552. He explains that, during the course of

criminal proceedings against him in a state court in Florida, "a confidential informant was

named as having been a 'source' for the F.B.I., and that confidential source had an impact

detrimental to [plaintiff] at trial." Compl. ¶ 2.[1] He seeks "verification and/or public

records to substantiate whether the confidential source actually worked on behalf of the

F.B.I." *Id.* ¶ 3.

---

[1]     The Court construes the Petition for Writ of Mandamus and/or Civil Complaint
Against Agency's "FOIA" [Dkt. #1] as a civil complaint ("Compl.").

On or about January 27, 2011, plaintiff submitted a FOIA request to the FBI's

Miami Field Office:

> I was _testified_ against by Osmin Desanges. I am seeking to
> know "if and when" Desanges was ever a FBI informant for
> the F.B.I. and/or other law [e]nforcement agencies during the
> three (3) years before my arrest and after. That would be
> 1996 until 2002. During my trial officers Juan Mayato and
> Lawrence Taddeo testified that Desanges was an FBI
> informant and that FBI agent "Chuck Daley" was his contact
> handler. Please give me the public records your office has
> regarding this matter.

Ex. A to Compl. (Letter from plaintiff to FBI dated January 27, 2011) (emphasis in

original); _see also_ Decl. of David M. Hardy ("Hardy Decl.") [Dkt. #16-1], Ex. to Mem. of

P. & A. in Supp. of Def.'s Mot. for Summ. J. [Dkt. #16] ("Def.'s Mem."), ¶ 6; Ex. A to

Hardy Decl. (Letter from plaintiff to FBI dated February 1, 2011). FBI denied the

request (FOIA Request No. 1161725-000) in its entirety, Hardy Decl. ¶ 7, for the

following reasons:

> You have requested records concerning a third party (or third
> parties). Records pertaining to a third party generally cannot
> be released absent express authorization and consent of the
> third party, proof that the subject of your request is deceased,
> or a clear demonstration that the public interest in disclosure
> outweighs the personal privacy interest and that significant
> public benefit would result from the disclosure of the
> requested records . . . . These records are also generally
> exempt from disclosure pursuant to sections (b)(6) and
> (b)(7)(C) of the [FOIA] . . . . This response should not be
> considered an indication of whether or not records responsive
> to your request exist in FBI Files . . . .

Ex. B to Hardy Decl. (Letter from David M. Hardy, Section Chief, Record/Information

Dissemination Section, Records Management Division, FBI, to plaintiff dated February

25, 2011) at 1.  Plaintiff was afforded an opportunity to submit either a privacy waiver signed by the subject, proof of the subject's death, or a demonstration of a public interest in the requested information.  Hardy Decl. ¶ 7-8.  FBI did not receive a response from plaintiff within the time allotted, and it administratively closed the request.  *Id.* ¶ 8.

Plaintiff then submitted a second FOIA request for information pertaining to Osmin Desanges.  Hardy Decl. ¶ 9; *see* Ex. C to Hardy Decl. (Letter from plaintiff dated March 9, 2011).  Along with the request, plaintiff submitted a privacy waiver bearing his signature, but not that of Osmin Desanges.  Ex. C to Hardy Decl. (Certificate of Identity dated March 9, 2011).  FBI treated this submission as a request for information about plaintiff only, and proceeded to search its Central Records System ("CRS") for responsive records.  Hardy Decl. ¶ 10.  FBI located "one file responsive to his request," and of the file's twenty-eight pages, FBI released "16 pages . . . either in full or in part in accordance with [FOIA] exemptions [6, 7(C), and 7(E)]."  Hardy Decl. ¶ 11.

Plaintiff's third FOIA request (FOIA Request No. 1166872-000) again sought information about Osmin Desanges.  Hardy Decl. ¶ 12; *see* Ex. F to Hardy Decl. (Letter from plaintiff to David Hardy dated May 15, 2011).  Again, FBI denied the request in its entirety because plaintiff submitted neither Desanges' signed privacy waiver, proof of Desanges' death, nor a public interest in disclosure of the requested information.  Hardy Decl. ¶ 13-15; *see* Ex. G to Hardy Decl. (Letter from David Hardy to plaintiff dated May 24, 2011).  Yet another request to FBI's Headquarters sought "information . . . that will confirm or indicate rather [sic] or not Osmin Des[]anges were [sic] involved in any [FBI] investigations that are declassified and are part of public records."  Hardy Decl. ¶ 14; *see*

Ex. H to Hardy Decl. (Letter from plaintiff dated June 6, 2011).  FBI denied the request

on the same basis, noting that "it is the FBI's policy to neither confirm nor deny the

existence of any records which would indicate or reveal whether or not an

individual . . . is of investigatory interest to the FBI."  Ex. B to Compl. (Letter from

David M. Hardy to plaintiff dated June 20, 2011); Ex. I to Hardy Decl. (same).  Plaintiff

was informed of his right to appeal the determination to DOJ's Office of Information

Policy ("OIP").  Ex. I to Hardy Decl. (Letter from David Hardy to plaintiff dated June 20,

2011 regarding FOIA Request No. 1166872-000).  Plaintiff pursued an administrative

appeal, and OIP confirmed FBI's determination.  Hardy Decl. ¶ 18; Ex. L to Hardy Decl.

(Letter from Janice Galli McLeod, Associate Director, OIP, to plaintiff dated September

16, 2011 regarding Appeal No. AP-2011-02448).

## DISCUSSION

FBI argues that it properly denied plaintiff's FOIA request, Def.'s Mot. at 1, that it

"properly invoked FOIA exemption 7(C) . . . to refuse to confirm or deny the existence of

third-party information to Plaintiff," Def.'s Mem. at 5, and that it is therefore entitled to

judgment as a matter of law, *id.*

### I.   *Summary Judgment in a FOIA Case*

"FOIA cases typically and appropriately are decided on motions for summary

judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C.

2009).  The Court will grant summary judgment if the movant shows that there is no

genuine dispute as to any material fact and, therefore, is entitled to judgment as a matter

of law. Fed. R. Civ. P. 56(a).  In a FOIA action to compel production of agency records,

the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F. 3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).  Summary judgment may be based solely on information provided in an agency's supporting affidavits or declarations if they are relatively detailed and describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).  "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (quoting *U.S. Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 142 (1989)).

## II.    *Law Enforcement Records and Exemption 7(C)*

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," but only to the extent that disclosure of such records would cause an enumerated harm.  *See* 5 U.S.C. § 552(b)(7); *FBI v. Abramson*, 456 U.S. 615, 622 (1982).  "To show that the disputed documents were compiled for law enforcement purposes, the [agency] need only establish a rational nexus between the investigation and

5

one of the agency's law enforcement duties and a connection between an individual or

incident and a possible security risk or violation of federal law." *Blackwell v. FBI*, 646

F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

FBI's declarant explains:

> The FBI's responsibilities include the investigation of crimes
> in violation of the laws of the United States as well as the
> collection of evidence in cases in which the United States is
> or may be a party in interest (See 28 C.F.R. § 0.85). Plaintiff
> alleges that the subject of his third-party request, Osmin
> Des[]anges, served as a paid informant for the FBI. Any
> records the FBI would have related to this individual, in that
> capacity, would have been specifically compiled for law
> enforcement purposes and would relate directly to, and be the
> product of, the FBI's investigation of violations of the United
> States Code for which the FBI has investigative
> responsibility. Any records created by the FBI, in the course
> of its investigations, were they to exist – to include any
> informant records – would have been compiled to document
> the investigative actions and findings in the criminal case
> against plaintiff and support a potential prosecution.

Hardy Decl. ¶ 22. FBI thus establishes, and plaintiff does not dispute, that records

responsive to plaintiff's FOIA request, if any such records exist, would have been

compiled for law enforcement purposes.

Under Exemption 7(C), an agency may withhold information in law enforcement

records that "could reasonably be expected to constitute an unwarranted invasion of

personal privacy." 5 U.S.C. § 552 (b)(7)(C). In determining whether this exemption

applies to particular material, the Court must balance the interest in privacy of individuals

mentioned in the records against the public interest in disclosure. *See Am. Civil Liberties*

*Union v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011); *Sussman v. U.S. Marshals*

*Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007).  "[I]ndividuals have a strong interest in not

being associated unwarrantedly with alleged criminal activity," *Stern v. FBI*, 737 F.2d 84,

91-92 (D.C. Cir. 1984), and for purposes of Exemption 7(C), the only relevant public

interest "is one that focuses on 'the citizens' right to be informed about what their

government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir.

1992) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489

U.S. 749, 773 (1989)).  It is the requester's obligation to articulate a public interest

sufficient to outweigh the individual's privacy interest, and the public interest must be

significant. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

## III.    FBI's Glomar Response

If an individual is the target of a FOIA request, the agency to which the FOIA

request is submitted may provide a "Glomar" response—refusing to confirm or deny the

existence of records or information responsive to the FOIA request—on the ground that

even acknowledging the existence of responsive records constitutes an unwarranted

invasion of the targeted individual's personal privacy. *See Phillippi v. CIA*, 546 F.2d

1009, 1014-15 (D.C. Cir. 1976) (describing background of FOIA case arising from

request for information about "the Hughes Glomar Explorer, a large vessel publicly listed

as a research ship owned and operated by the Summa Corporation," which allegedly was

owned and operated by the United States government); *Enzinna v. U.S. Dep't of Justice*,

No. 97-5078, 1997 WL 404327, at *2 (D.C. Cir. June 30, 1997) (affirming the agency's

refusal to confirm or deny the existence of responsive records because acknowledging the

existence of such records would associate a witness with a criminal investigation).

FBI's declarant explains that, upon receipt of a request seeking "access to investigatory records concerning a third party, the FBI's policy is to neither confirm nor deny that it has responsive records unless the requester provides a notarized authorization (privacy waiver) from the third party, provides proof of [the third party's] death, or demonstrates a public interest in the records that is sufficient to outweigh that third party individual's privacy rights." Hardy Decl. ¶ 24. He further explains that "[a]n individual's association with a criminal investigation, as a suspect, victim, witness or source, tends to stigmatize the individual," and even if that individual had been "a witness on the record, an official acknowledgement of that association . . . is likely to lift that association out of practical obscurity (particularly if the testimony occurred a significant number of years ago) and into the forefront of public awareness, further aggravating the stigma associated with such a disclosure." Hardy Decl. ¶ 24.

Where, as here, the requester did not submit the subject's privacy waiver, the FBI "conducts a balancing test to determine if the alleged public interest outweighs the privacy interests of the third party whose records are being requested." Hardy Decl. ¶ 25. FBI's Glomar response necessarily reflects the agency's determination that Desanges' privacy interest outweighs any public interest in disclosure. *See* Hardy Decl. ¶ 26. The FBI's declarant further states:

> The mere presence of [Osmin Desanges'] name in FBI investigatory files, if present, could cast him in an unfavorable or negative light to members of the public. Plaintiff alleges that two officers testified at trial that Osmin Des[]anges was an FBI informant. Plaintiff also avers that Des[]anges testified against him resulting in plaintiff's conviction . . . . Even assuming that plaintiff was correct . . . ,

> [he] failed to articulate a sufficiently strong public interest. Particularly with the passage of time, testimony on the public record fades into practical obscurity, and the privacy interests of those individuals who either testify or are discussed during court testimony grow concomitantly stronger.

Hardy Decl. ¶ 27.

Plaintiff responds by arguing that disclosure of information about Osmin Desanges "is not an invasion on the third party's privacy due to [p]laintiff knowing the third party's name, address, etc." Pl.'s Resp. to Def.'s Mot. for Summ. J. [Dkt. #18] ("Pl.'s Opp'n") at 1. But the individual's privacy interest also "encompass[es] the individual's control of information concerning his or her person," and is not an interest the government may waive without a significant interest in doing so. *See Reporters Comm.*, 489 U.S. at 763-65, 780 ("[T]he privacy interest protected by Exemption 7(C) is . . . at its apex while the FOIA-based public interest in its disclosure is at its nadir."). Further, a third party may testify in open court and still maintain an interest in his personal privacy. *See, e.g., Jones v. FBI*, 41 F.3d 238, 247 (6th Cir. 1994); *Valdez v. U.S. Dep't of Justice*, 474 F. Supp. 2d 128, 133 (D.D.C. 2007). The individual maintains this interest even if the requester already knows, or is able to guess, his identity. *See Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1491 (D.C. Cir. 1984) (noting that further harassment and annoyance could occur if the agency were to *confirm* the individual's role); *Pugh v. U.S. Dep't of Justice*, 793 F. Supp. 2d 226, 233 (D.D.C. 2011). This is so even here, where Desanges' status as an FBI informant may have been disclosed in deposition testimony, *see* Exs. A & C to Pl.'s Opp'n (respectively, excerpts of deposition testimony of Detective Lawrence Taddeo and Osmin Desanges), and trial testimony, *see* Exs. B & D to Pl.'s Opp'n

(respectively, excerpts of trial testimony of Detective Juan Mayato and Osmin Desanges), in the course of the criminal proceedings against plaintiff.

Next, plaintiff invokes the Confrontation Clause, *see* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."), and his rights as a criminal defendant "to test [Desanges'] credibility and his knowledge of the material facts" in the criminal case against plaintiff. Pl.'s Opp'n at 3. According to plaintiff, if the FBI were to release the information he requests, it "would have caused [plaintiff] to subject Osmin Desanges to rigorous cross-examination of an impeaching nature." Decl. of Joseph Seme, Ex. to Pl.'s Opp'n, ¶ 4. Plaintiff thus puts his personal interest in challenging his criminal conviction above the recognized privacy interest of the subject of his FOIA request. A plaintiff's "personal stake in using the requested records to attack his conviction[] does not count in the calculation of the public interest." *Oguaju v. United States,* 288 F.3d 448, 450 (D.C. Cir. 2002) (affirming the district court's grant of summary judgment to the defendants in a FOIA action because the plaintiff's invocation of the public interest exception was based on the exculpatory potential of the information he sought), *vacated and remanded on other grounds sub nom.*, *Oguaju v. U.S. Marshals Serv.*, 541 U.S. 970 (2004), *reinstated sub nom.*, *Oguaju v. United States*, 378 F.3d 1115 (D.C. Cir. 2004), *op. amended*, 386 F.2d 273 (D.C. Cir. 2004). Contrary to plaintiff's assertion, *see* Pl.'s Opp'n at 4-5, a FOIA suit is not the equivalent of discovery in a criminal case. *See Martin v. U.S. Dep't of Justice,* 488 F.3d 446, 453 (D.C. Cir. 2007) (affirming the district court's holding that plaintiff did not satisfy public interest exception because his interest in the "allegedly

exculpatory evidence" he sought was "private in nature"); *Boyd v. Criminal Div. of the U.S. Dep't of Justice*, 475 F.3d 381, 390 (D.C. Cir. 2007) (noting that disclosure requirements under the FOIA are not coextensive with the government's obligation to disclose exculpatory material for a defendant's criminal trial); *see also BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575 n.22 (1996) (noting that "strict constitutional safeguards afforded to criminal defendants are not applicable to civil cases.").

If the FBI were to confirm the existence of investigative records pertaining to Osmin Desanges, the agency would necessarily reveal the information its Glomar response is intended to shield.  Accordingly, the Court concludes that the FBI's Glomar response was appropriate. *See, e.g., Smith v. FBI*, 663 F. Supp. 2d 1, 5 (D.D.C. 2009) (affirming Glomar response with respect to a request for disciplinary reports regarding an FBI agent); *Valdez*, 474 F. Supp. 2d at 131-34 (concluding that Glomar response was "adequately justified").

## CONCLUSION

There remains no genuine issue of material fact in dispute, and FBI has demonstrated its entitlement to judgment as a matter of law.  Its Glomar response to plaintiff's FOIA request for information about Osmin Desanges was appropriate, and, accordingly, its Motion for Summary Judgment [Dkt. #16] will be GRANTED.  An Order accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge